# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## CIVIL ACTION NO._____

| | |
|---|---|
| ALEISHA MAGGETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| MURPHY-BROWN LLC, ) | |
| ) | |
| Defendant. ) | |

NOW COMES Plaintiff, complaining of Defendant and alleges as follows:

**INTRODUCTION**

1. This action is brought to remedy sexual harassment and sex discrimination against the Plaintiff.

2. Plaintiff's Complaint is brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and under the Civil Rights Act of 1991, as now set forth in 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981(A)(b).

3. This action includes pendent state law claims for Assault and Battery, Intentional Infliction of Emotional Distress, and Wrongful Discharge.

4. Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to 42 U.S.C. § 2000(e)(g), 42 U.S.C. §1981(a)(b), and the law of North Carolina.

1

## JURISDICTION AND VENUE

5. Plaintiff is a female resident of Norfolk, Virginia. At the time of the events described in this Complaint, Plaintiff lived in Northhampton County, North Carolina and worked at a hog farm owned and run by Defendant Murphy Brown LLC in Halifax County, North Carolina.

6. Plaintiff timely filed a Charge of Discrimination against Defendants Murphy-Brown LLC and Wayne Artis with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2007, complaining of sexual harassment and sex discrimination. The EEOC issued Plaintiff a right to sue letter on September 12, 2007.

7. Plaintiff has complied fully with all prerequisites to jurisdiction in this court under Title VII.

8. This court has jurisdiction of this case under Title VII, 42 U.S.C. 2000e-5(f)(3) and has pendent jurisdiction of the state law claims.

9. The unlawful employment practices complained of herein occurred within Halifax County, North Carolina, and venue properly lies in the Eastern District of the United States District Court for North Carolina pursuant to § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

10. Plaintiff Aleisha Maggette is a female resident of Norfolk, Virginia.

11. Defendant Murphy-Brown LLC (hereinafter, "Murphy-Brown") is a North Carolina corporation, authorized to do business, and doing business in the State of North Carolina.

12. Defendant Murphy-Brown owns and operates 500 hog farms in the United States,

employing 4,800 people in twelve different states.

13. At all times relevant to this Complaint, Defendant Murphy-Brown employed Wayne Artis who acted within the course and scope of his employment and agency with respect to the acts complained of in this Complaint.

## **STATEMENT OF FACTS**

14. Plaintiff Aleisha Maggette is a 22-year-old female.

15. Plaintiff graduated from Northampton East High School in 2004.

16. Plaintiff was hired by Defendant Murphy-Brown on June 28, 2005.

17. Shortly after being hired, Plaintiff was assigned to Murphy-Brown Hog Farm No. 51 in Scotland Neck, NC, a breeding and farrowing facility where pigs are born and raised until they can be transferred to another farm to be fattened for market.

18. Wayne Artis is a 50-year-old male who weighs more than 200 lbs. At all times relevant to this Complaint, he was the Manager of Hog Farm No. 51.

19. At all times relevant to this Complaint, all employees at Hog Farm No. 51 reported directly to Wayne Artis.

20. Manager Artis set the work schedules and assigned the tasks of the employees at Hog Farm 51. Manager Artis had the authority to evaluate, discipline, and fire employees, including Plaintiff.

21. Shortly after Plaintiff was transferred to Hog Farm No. 51, Manager Artis began to make unwelcome sexual advances toward her.

22. When Plaintiff walked by him, Manager Artis would reach out, touch her hips, and say "Um, um."

3

Case 4:07-cv-00188-FL   Document 1   Filed 11/12/07   Page 3 of 16

23. Manager Artis made at least ten unwelcome sexual advances toward Plaintiff prior to March, 2006. On each occasion, Plaintiff moved away from him, told him "no" or "stop," and rejected his advances.

24. In March, 2006, Plaintiff told Manager Artis that she was pregnant. After learning this information, Artis did not touch or make any inappropriate comments toward Plaintiff before she began her maternity leave in late Spring, 2006.

25. On or about September 22, 2006, Plaintiff returned to work from maternity leave.

26. Upon Plaintiff's return to work, Manager Artis resumed his unwelcome sexual advances.

27. Manager Artis repeatedly touched Plaintiff's hips and breasts and attempted to kiss her. Plaintiff always responded by saying "no" and moving away from him.

28. Plaintiff became afraid of Manager Artis and afraid of losing her job.

29. Plaintiff requested to be transferred to another farm on several occasions in October, November, and December of 2006. Manager Artis always responded, "You are not going anywhere."

30. In November, 2006, Manager Artis trapped Plaintiff in hog house #7. Manager Artis forcibly grabbed Plaintiff, held his body against hers and began to unzip her uniform. Manager Artis is much bigger and stronger than Plaintiff. Manager Artis reached into Plaintiff's uniform and touched her vagina.

31. Plaintiff pushed Manager Artis away and yelled, "No, stop!" Plaintiff then ran from the building and Manager Artis called after her, repeating, "You know you like it."

32. Plaintiff ran to the farrowing house and found one of her coworkers, William

Myers. Myers is a male, approximately 59-years-old. Myers was a Senior Coordinator (also referred to as Supervisor) for Defendant and authorized to act and did act on behalf of Defendant and within the course and scope of his authority as a Supervisor at Hog Farm 51.

33. Plaintiff said to Myers, "I have to get off of this farm."

34. Myers asked Plaintiff what had happened and Plaintiff told him about the incident with Manager Artis.

35. Myers said that he was not surprised, that Manager Artis had behaved similarly toward other women at the farm in the past, and that the company did nothing about it.

36. Myers told Plaintiff that the Human Resources representatives for Murphy-Brown would not believe Plaintiff's story and that they would defend Manager Artis.

37. In December, 2006, Manager Artis again trapped Plaintiff in hog house #7. When Plaintiff saw Manager Artis approaching her, she attempted to avoid him by walking down a different aisle.

38. Manager Artis caught up with Plaintiff, grabbed her, held her, unzipped his pants, and took out his penis. Manager Artis then attempted to place Plaintiff's hand on his penis. Plaintiff told him to stop and pulled away from him. Plaintiff then ran from the building.

39. The day after this incident, Plaintiff confronted Manager Artis in the presence of her co-worker Myers and told Artis that she did not want him to touch her and to stop doing it.

40. Manager Artis appeared angered at this exchange.

41. Shortly after this incident, Manager Artis tried a different approach with Plaintiff. He gave Plaintiff and another female employee, Dorothy Sled, earrings he had purchased at a jewelry store as Christmas presents.

5

Case 4:07-cv-00188-FL    Document 1    Filed 11/12/07    Page 5 of 16

42. Plaintiff did not wear the earrings. She told Artis that her boyfriend did not want her to wear the earrings. Manager Artis responded, "You are letting your boyfriend control you."

43. Later in December, 2006, Plaintiff was working on a weekend when she heard voices and noises outside one of the buildings. Plaintiff called Manager Artis and reported there were people prowling around the building.

44. Manager Artis came to the farm. Instead of patrolling the outside of the building, he approached Plaintiff and tried to grab and kiss her.

45. Plaintiff told Manager Artis, "I did not call you out here to have sex. I called you because I heard somebody outside the building."

46. Manager Artis became angry with Plaintiff and told her that she was wasting his time. He also told her, "From now on, you should only come out here when everybody else do."

47. During January, 2007, Manager Artis continued to make advances toward Plaintiff. He repeatedly talked dirty to her and attempted to touch her hips.

48. Plaintiff at all times tried to avoid Manager Artis and to stay out of his reach.

49. Approximately two weeks after Christmas, Manager Artis approached Plaintiff when she was alone in the office near the cafeteria.

50. Manager Artis offered Plaintiff $500 in cash in exchange for sex. Plaintiff told Manager Artis "no" and pushed the money away.

51. Plaintiff told Myers about this exchange and Myers said Manager Artis was attempting to buy Plaintiff.

52. Manager Artis decided he was going to get nowhere in his advances toward

6

Plaintiff and began to discipline her because she had rejected him. He wrote Plaintiff up and punished her for minor issues that he overlooked with other workers. He assigned her a greater volume of work than her coworkers and gave her tasks that were outside the realm of her usual job functions.

53. On or about February 12, 2007, Plaintiff called the farm and told her co-worker, William Myers, that she would be late because her infant son was ill and not breathing well. Plaintiff had always been allowed to call Supervisor Myers to advise that she would be late or absent.

54. When she arrived at work that day, she went to the office to sign in. Manager Artis was in the office. He attempted to fondle Plaintiff. Plaintiff told Manager Artis to keep his hands off her.

55. Manager Artis became angry that he had again been rejected and threatened to find a reason to fire Plaintiff.

56. On February 14, 2007, Production Manager Rick Fulford visited Hog Farm 51 while Manager Artis was at a training session. Plaintiff left to get lunch at the local Subway without signing out, because Manager Artis did not require the employees to sign out for such breaks. Plaintiff is informed and believes that Production Manager Fulford reported to Manager Artis that she had left without clocking out.

57. On or about February 16, 2007, Manager Artis asked Plaintiff to put up some heat lamps before she left for the day. He also assigned Plaintiff extra chores, insisting that she clean the bathrooms and take out the trash. When she told him that was not part of her normal job, he threatened Plaintiff, saying, "If you leave without cleaning the bathrooms, I'll fire you."

58. Plaintiff made sure that the bathrooms were clean and took out the trash. She then put up three heat lamps and left to go home because her shift had ended.

59. On or about February 17, 2007, Plaintiff received a call at home on the weekend from Supervisor Myers who informed Plaintiff that Manager Artis was furious with Plaintiff. Myers reported that Manager Artis said Plaintiff had embarrassed him and that he wanted to punch her and beat her up.

60. Plaintiff was scared to go back to work the following Monday, February 19, 2007. She called and informed Supervisor Myers that she could not come in that day.

61. When Plaintiff arrived at work on Tuesday, February 20, 2007, Manager Artis called her into his office. Manager Artis told Plaintiff he had written her up for missing work on Monday, leaving without clocking out, and failing to put up heat lamps.

62. Manager Artis then fired Plaintiff based on these misleading and false allegations.

63. Manager Artis would not have fired another employee for the same offenses and was terminating Plaintiff because of her refusal to submit to his sexual advances and her objection to his sexual harassment of her.

64. On or about Wednesday, February 21, 2007, Plaintiff called Laura Brooks at the Murphy-Brown Human Resources department in Waverly, VA.

65. Plaintiff told Brooks that she wanted to report that she had been sexually harassed at her job by her manager, Wayne Manager Artis. Plaintiff apprised Brooks of all the ways in which Manager Artis had harassed her, as set forth above.

66. Brooks asked Plaintiff why she waited until she had been fired to report this activity. Plaintiff responded that she had been afraid of Manager Artis and afraid of losing her

job.

67. Since losing her job, Plaintiff has had trouble sleeping and has suffered bad nightmares. She becomes frightened every time she sees a white truck, believing it to be Manager Artis and fearing that he will hurt her. Plaintiff is scared to leave her house and to go to the Scotland Neck area.

68. Plaintiff was terminated from her position because she rejected the unwelcome sexual advances of Manager Artis.

69. As a proximate result of the actions of Defendant as set forth herein, Plaintiff has suffered lost wages.

70. As a proximate result of the actions of Defendant as set forth herein, Plaintiff suffered humiliation, emotional distress, and loss of enjoyment of life. She has sought medical treatment and been diagnosed as suffering from depression and post traumatic stress disorder.

71. As a proximate result of the actions of Defendant as set forth herein, Plaintiff is entitled to compensatory damages in an amount exceeding $10,000.

### FIRST CLAIM FOR RELIEF:
### SEXUAL HARASSMENT and SEX DISCRIMINATION

72. Plaintiff realleges and incorporates by reference paragraphs 1 through 71 of this Complaint.

73. The actions of Defendant, as set forth herein, constitute harassment and discrimination against Plaintiff on the basis of her gender.

74. Defendant Murphy-Brown's manager, Wayne Artis, made unwelcome sexual advances toward Plaintiff.

75. Manager Artis took tangible employment actions against Plaintiff because of

9

Plaintiff's refusal to submit to his sexual advances, including increasing her workload, assigning her worse duties, disciplining her, and firing her, because she rejected his sexual advances.

76. Defendant is strictly liable for the sexual harassment of Plaintiff by Manager Artis.

77. Manager Artis also created a hostile working environment for Plaintiff on the basis of her gender. The hostile work environment was both severe and pervasive.

78. The conduct of Manager Artis unreasonably interfered with Plaintiff's work performance.

79. The conduct of Defendant's employee, Manager Artis, constituted a continuing violation of Plaintiff's right to be free from a work environment hostile to women.

80. Plaintiff was denied a safe workplace, free from sexual harassment, in violation of applicable federal law.

81. Plaintiff is informed and believes that Manager Artis has made similar sexual advances toward other female employees in the past.  .

82. Defendant was on notice of the illegal, sexually discriminatory conduct of its employee, Manager Artis.

83. Defendant knew or should reasonably have know of Manager Artis's propensity to engage in acts of sexual harassment and specifically of his sexual harassment of Plaintiff.

84. The actions of Defendant as set forth herein constitute sex discrimination and sexual harassment in violation of the rights of Plaintiff secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e, et seq. (Title VII).

85. The actions of Defendant constitute unlawful, intentional discrimination within

the meaning of the Civil Rights Act of 1991, 52 U.S.C. § 1981A(a)(1).

86. Defendant engaged in discriminatory practices against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from sexual discrimination and sexual harassment in the workplace, as set forth in, 42 U.S.C. § 1981A(b)(1).

87. Plaintiff has suffered lost wages and benefits in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

88. Plaintiff has suffered compensatory damages in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

89. Plaintiff is entitled to recover punitive damages from Defendant in an amount exceeding $10,000 as a proximate result of the conduct of Defendant as alleged herein.

90. Plaintiff has been forced to incur attorneys' fees in order to enforce her rights and is entitled to recover reasonable attorney's fees as necessary for the prosecution of this action.

## SECOND CLAIM FOR RELIEF: ASSAULT AND BATTERY

91. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 71 of the Complaint.

92. Defendant's employee, Wayne Manager Artis, assaulted Plaintiff by placing her in fear of unwelcome touching.

93. Defendant's employee, Manager Artis, assaulted and battered Plaintiff on numerous occasions as set forth above by touching her buttocks, breasts, and vagina.

94. This touching of Plaintiff was without her consent in any manner.

95. In his assault and battery of Plaintiff, Defendant's employee, Manager Artis, acted on behalf of Defendant.

11

96. In the alternative, Defendant knew that Manager Artis was likely to engage in such behavior and yet failed to prevent the assault and battery of Plaintiff, thereby condoning and ratifying the assault and battery of Plaintiff.

97. As a result of the assault and battery by Defendant upon Plaintiff, Plaintiff was insulted, humiliated, and emotionally and physically distressed.

98. Plaintiff is entitled to compensatory damages in an amount exceeding $10,000 as a proximate result of the assault and battery she suffered.

99. The assault and battery against Plaintiff was malicious and/or willful and wanton justifying an award of punitive damages against Defendant.

100. Defendant's managers and or officers either participated in or condoned the malicious and/or willful conduct, thereby justifying punitive damages against the corporate defendant, as set forth in N.C.G.S § 1D-15.

101. Plaintiff is entitled to punitive damages from Defendant for assault and battery in an amount greater than $10,000.

### THIRD CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 71 in support of this claim for relief.

103. The actions of Defendant as alleged herein constitute extreme and outrageous conduct and show a reckless indifference to the likelihood that said actions would cause severe emotional distress to Plaintiff.

104. The actions of Defendant as set forth herein were undertaken for the purpose of

embarrassing, humiliating, and harassing Plaintiff.

105. Defendant Murphy-Brown failed to halt the conduct of Defendant Artis and offer an appropriate remedy to female employees, like Plaintiff, and instead tolerated this conduct as acceptable and thereby ratified the behavior.

106. Defendant Murphy-Brown, although placed upon notice of Defendant Artis's extreme and outrageous conduct toward female employees, failed to engage in a proper investigation of said conduct and prevent Defendant Artis from engaging in said conduct, therefore ratifying the extreme and outrageous conduct.

107. Defendant knew, or reasonably should have known, that their behavior would cause emotional distress to Plaintiff, and, in fact, Defendant's conduct proximately caused injury and damage to Plaintiff as set forth herein.

108. Plaintiff's emotional distress, as a result of the actions of Defendant alleged herein, was severe and disabling. Plaintiff went through sleepless nights, crying spells, and flashbacks. She sought medical treatment and was diagnosed as suffering from depression and post-traumatic stress disorder. Her emotional distress was a result of the illegal actions of Defendants as set forth herein.

109. Plaintiff has suffered compensatory damages as a proximate result of the Defendant's conduct in an amount exceeding $10,000.

110. The intentional infliction of emotional distress upon Plaintiff was malicious and/or willful and wanton justifying an award of punitive damages.

111. Managers of Defendant Murphy-Brown either participated in or condoned malicious and/or willful and wanton conduct, thereby justifying punitive damages against the

corporate defendant, as set forth in N. C. G. S. § 1D-15.

112. Plaintiff is entitled to punitive damages from Defendant for intentional infliction of emotional distress in an amount greater than $10,000.

113. Plaintiff has been forced to incur attorney's fees in order to enforce her rights and is entitled to recover reasonable attorney's fees necessary for the prosecution of this action.

### FOURTH CLAIM FOR RELIEF: WRONGFUL DISCHARGE

114. Plaintiff hereby incorporates by reference paragraphs 1 through 71 of the Complaint as though set forth fully herein.

115. The termination of Plaintiff was in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Employment Practices Act, N. C. G. S. § 143-42.1, et seq., which makes discrimination on account of sex an unlawful employment practice in North Carolina.

116. Plaintiff was discharged from her position because of her gender and because of her refusal to submit to unwelcome sexual advances.

117. Plaintiff is entitled to recover from Defendant Murphy-Brown compensatory damages as provided by North Carolina law, including but not limited to, reinstatement to her position, back pay, front pay, benefits of employment, inconvenience, mental suffering, loss of enjoyment of life, and humiliation, which damages are in excess of $10,000, the exact amount to be calculated at trial.

118. Defendant's conduct as set forth herein was malicious and/or willful and wanton, thereby justifying an award of punitive damages.

119. Managers of Defendant Murphy-Brown either participated in or condoned the

malicious and/or willful and wanton conduct, thereby justifying punitive damages against the corporate defendant, as set forth in N. C. G. S. § 1D-15.

120.     Plaintiff is entitled to punitive damages from Defendant Madison River in excess of $10,000.

121.     Plaintiff is further entitled to recover the costs and expenses of this action and such interest as may be allowed by law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1.     That all issues of fact raised by this pleading be tried by a jury.

2.     That the Court declare that the acts and practices complained of herein are in violation of Title VII of the 1964 Civil Rights Act and North Carolina law.

3.     That Plaintiff have and recover of Defendant Murphy-Brown for sexual discrimination in violation of Title VII of the 1964 Civil Rights Act, compensatory damages in an amount exceeding $10,000 and punitive damages in an amount exceeding $10,000.

4.     That Plaintiff have and recover of Defendant Murphy-Brown for assault and battery, compensatory damages in an amount exceeding $10,000.

5.     That Plaintiff have and recover of Defendant Murphy-Brown punitive damages for assault and battery in excess of $10,000.

6.     That Plaintiff have That Plaintiff have and recover of Defendant Murphy-Brown for intentional infliction of emotional distress, compensatory damages in an amount exceeding $10,000.

7.     That Plaintiff have and recover of Defendant Murphy-Brown punitive damages

15

Case 4:07-cv-00188-FL   Document 1   Filed 11/12/07   Page 15 of 16

for intentional infliction of emotional distress punitive damages in excess of $10,000.

8. That Plaintiff have That Plaintiff have and recover of Defendant Murphy-Brown for wrongful discharge, compensatory damages in an amount exceeding $10,000.

9. That Plaintiff have and recover of Defendant Murphy-Brown punitive damages for wrongful discharge, punitive damages in excess of $10,000.

10. That the Court award Plaintiff reasonable attorney's fees as provided by § 706(K) of Title VII, 42 U.S.C. § 2000e(6)(k).

11. That the Court direct Defendant to pay Plaintiff such interest as may be required by law.

12. That the costs of this suit be taxed against Defendant.

13. That the Court order such other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff.

This the 12th day of November, 2007.

                                                    **GLENN, MILLS & FISHER, P.A.**

                                                   /s/Stewart W. Fisher
Stewart W. Fisher (N.C. Bar # 10327)
Post Office Drawer 3865
Durham, North Carolina 27702-3865
Telephone: (919) 683-2135
Facsimile: (919) 683-9339
E-mail Address: sfisher@gmf-law.com

ATTORNEY FOR PLAINTIFF

16